THE STATE, EX REL. STIPE, v. SUMMIT COUNTY BOARD
OF EDUCATION ET AL.

*Schools—Transfer of territory not in centralized district man-
    datory, when—Section 4696, General Code—Petition of
    seventy-five per cent. of electors in territory—Mandamus
    lies to compel transfer—Territory transferred when peti-
    tion filed with county board of education.*

The provisions of Section 4696, General Code, as now in
    force, being mandatory in terms upon a county board of
    education, requiring such board to transfer territory, not
    in a centralized school district, from "a school district of
    the county school district to an exempted village, city or
    county school district, the territory of which is contigu-
    ous thereto," when a petition signed by 75 per cent. of
    the electors in the territory proposed to be transferred is
    filed with the county board of education of the county in
    which such territory is located: *Held*, that such territory
    is transferred in contemplation of law from the time
    of the filing of such petition with such county board of
    education, and a writ of mandamus will issue to compel
    a transfer of such territory upon the neglect or refusal
    of such board to do so.

(Decided July 10, 1926.)

IN MANDAMUS.

*Messrs. Commins, Brouse, Englebeck & Mc-
Dowell,* and *Mr. Bruce Bierce,* for plaintiff.
*Mr. W. A. Spencer,* for defendants.

FUNK, J.   This is an original action in man-
damus, commenced in this court by an elector of
Green township, Summit county, against the Sum-
mit county board of education and the several mem-
bers thereof, praying that a writ of mandamus

issue, commanding them "to pass a resolution transferring, for school purposes, the territory described in this petition from the Green township rural school district to the Stark county school district," under Section 4696, General Code (109 Ohio Laws, 65), the pertinent part of which reads:

"A county board of education may, upon a petition of a majority of the electors residing in the territory to be transferred, transfer a part or all of a school district of the county school district to an exempted village, city or county school district, the territory of which is contiguous thereto. Upon petition of 75 per cent. of the electors in the territory proposed to be transferred the county board of education shall make such transfer. A county board of education may accept a transfer of territory from any such school district and annex same to a contiguous school district of the county school district."

The section further provides for the acceptance by the board of the county school district to which the property is transferred and for the transfer of title to school property and a division of the funds.

The case was submitted upon an agreed statement of facts, which shows that a petition signed by 75 per cent. of the electors of the territory proposed to be transferred was filed with the Summit county board of education on April 15, 1926, which territory lies contiguous to the territory of the Stark county school district; that the board of education of the Green township rural school district on March 15, 1926, passed a resolution providing for a special election in said rural school district for the purpose of determining whether or not the

electors desired to centralize said district; that the vote was duly taken on April 27, 1926, and resulted in 439 votes for centralization and 142 votes against it; that said Summit county board of education, at its regular meeting on May 14, 1926, which was the first regular meeting of said board after said petition was presented, denied said petition.

The particular question at issue is, From what time does the transfer under this section and these facts take effect? Is it from the time of the filing of such petition by 75 per cent. of the electors, or is it from the time of the action of the Summit county board of education, or some other time?

It will be observed that Section 4696 provides that when a majority, and less than 75 per cent. of the electors, petition for transfer, the county board of education can exercise its discretion and allow or deny the transfer, but that where 75 per cent. or more sign the petition the statute is mandatory, and such board "shall make such transfer."

In *State, ex rel. Brenner,* v. *Bd. of Edn.,* 97 Ohio St., 336, 120 N. E., 174, the court held that under Section 4696, as amended (106 Ohio Laws, p. 397), whenever 75 per cent. of the electors residing in the territory sought to be transferred petition for such transfer the county board of education has no discretion and is required under the provisions of that section to transfer such territory in accordance with the prayer of the petition filed with it. After this case was decided in 1918, the Legislature, in 1919 (108 Ohio Laws, pt. 1, p. 705), amended Section 4696, and eliminated the mandatory part thereof arising upon petition of 75 per cent. or more of the electors, and left it discretionary with the board to make the transfer upon the petition of

a majority of the electors of the territory proposed to be transferred. And again, in 1921, the Legislature amended Section 4696 (109 Ohio Laws, p. 65), and re-established said mandatory provision upon petition of 75 per cent. of the electors—so that above decision in 97 Ohio St., 336, 120 N. E., 174, has application to the law now in force.

It is thus settled that after the filing of the petition of 75 per cent. or more of such electors, requesting such transfer, the county board of education has no discretion whatever to do anything but verify the genuineness of the signatures and ascertain whether or not 75 per cent. or more of the electors in the territory proposed to be transferred signed the petition, and whenever such board makes such finding . it must make the transfer— just the same as a rural board of education has no discretion and must proceed to the centralization of the schools of a rural school district after the election resulting in favor of it.

In this respect the duties of the county board of education are somewhat similar to the duties of the officer or officers with whom an initiative and referendum petition is filed—it being the duty of such officers to proceed to ascertain whether or not there is the required number of genuine signatures upon such petition, and when they have done that, and such petition is found to contain the required number of signatures, it becomes effective by operation of law and must be allowed by such officers, and the election be called as provided by law.

In *State ex rel. Bd. of Edn.* v. *Bd. of Edn.,* 104 Ohio St., 75, 135 N. E., 455, the court held:

"(1) A school district is a 'centralized school

district,' within the contemplation of the statute regulating the same, from the time of the election resulting in favor of the proposition of centralization."

It may be said that the signing and filing of such petition by the electors is somewhat analogous to voting, the signing of the petition being similar to the marking of the ballot, the filing being similar to the putting of the ballot into the box, and the verification of the signatures similar to the counting of the votes. It would therefore seem that whenever such county board of education is satisfied with the genuineness of the signatures of 75 per cent. of the electors of such territory, such county board of education must make the transfer, and that the rights of the petitioners then relate back to the situation at the time of the filing of the petition with such county board of education, which is analogous to the time of election, and not to the time when such board makes the transfer after ascertaining that the petition contains the required number of signatures. If this were not so, the county board of education might easily delay the investigation to determine whether or not the petition contained the requisite number of genuine signatures long enough for a township rural board of education to thereafter pass the necessary resolution and cause an election for centralization to be held after the filing of such petition but before it was passed upon by such county board of education.

We do not think the county board of education can postpone the time when the petition becomes effective by postponing the time of making the transfer, and while it may be possible, and is alto-

gether probable, that such board was not required to call a special meeting to consider and pass upon the sufficiency of the petition, and while there is no time fixed by the statute when such board shall so act, we think such board is required to do so within a reasonable time and that the members of such board surely cannot disable themselves from making such transfer by delaying their action upon such petition so as to permit a state of facts to arise which did not exist at the time of the filing of the petition, thereby depriving themselves of jurisdiction and denying to the petitioners the rights given them by law, which rights, we believe, are fixed by the facts and situation on the day the petition was filed, and not by the facts and situation in existence at the time such county school board acts thereon.

Reasoning by analogy, the decision of the Supreme Court in 104 Ohio St., 75, 135 N. E., 455, *supra*, fixing the time a rural school district is centralized as from the date of the election resulting in favor of it, rather than from the time of passing of the resolution providing for such election, or the time of completing the details centralizing such district, further strengthens the contention that the territory is transferred from the time of filing the proper petition, as the section of the Code providing for the centralization of a rural school district (Section 4726, General Code) provides that, following such vote, the "rural board of education shall proceed at once to the centralization of the schools of the rural district."

This provision shows not only that there are things for such rural board of education to do to complete the centralization of a rural school dis-

trict after the vote in favor of it, the same as there are things for the county boards of education making and accepting the transfer to do to complete such transfer after the petition is filed requesting it, but also shows that such rural board of education "shall proceed" to do so, the same as Section 4696 says the county school board "shall make" such transfer.

It is significant that the Legislature re-enacted the mandatory part of Section 4696 after it had eliminated it after the decision in 97 Ohio St., 336, 120 N. E., 174; and, as there is nothing in the school law providing that a petition for the transfer of territory may not be filed after the township rural board of education has passed a resolution to submit the question of centralization to the electors of a rural school district, and before the vote is taken, and nothing in the law fixing which shall have the preference when such a situation arises, and as it is now settled that centralization becomes effective within the contemplation of the statute at the time of the election resulting in favor of it, and not at the time the rural school board afterwards takes the necessary steps to complete the centralization, it would seem, under the holdings in 97 Ohio St., 336, 120 N. E., 174, and 104 Ohio St., 75, 135 N. E., 455, that the only logical conclusion would be that the transfer relates back to the situation, and takes effect, within the contemplation of the statute now in force, at the time of the filing of the petition, and if it is desired to deprive electors of the right to petition for the transfer of territory for school purposes after a rural school district has passed the necessary resolution to submit the question of centraliza-

tion of schools to a vote of the electors such step should be taken by the Legislature.

Furthermore, it may be said that the duties of the county board of education in ascertaining whether or not a petition for transfer contains the requisite number of signatures are somewhat similar to the duties of the probate judge in probating a will, in that after the death of a testator a will is filed with the probate court but is of no effect until probated. The probate judge takes evidence to determine whether or not it was properly executed, and that facts exist entitling it to be probated in that particular court. When the judge has so determined, the will is entitled to probate, and it then relates back and becomes effective generally, as to the rights of creditors and all other interested persons, as of the time of the death of such testator, unless otherwise provided in the will itself as to legatees, or unless the question is regulated by statute, as it is in some states. So it is with a petition for transfer of territory for school purposes. It is of no effect when signed or filed with the county board of education until such board has ascertained the fact that it has been signed by 75 per cent. or more of the electors residing in the territory proposed to be transferred; when such board has ascertained that fact it is claimed that the territory is thereupon entitled to transfer for school purposes as of the time of the filing of the petition—just as a will becomes effective as of the time of the death of the testator, and is thus illustrative of the principle that an instrument may become effective prior to the time it was ascertained or determined that it was a valid instrument for the purposes intended.

It will be further observed that the right to petition for the transfer of territory, and the right to hold an election on the question of the centralization of a rural school district, are strictly statutory, and both come from the same source, to wit, the Legislature, and that the authority to call an election on the question of centralization is vested in the township rural board of education, while the authority to make the transfer of territory is vested in the county board of education, and that they are two wholly separate and unrelated bodies who act independently of each other, whose independent duties are strictly statutory and fixed by law with the same parentage, which not only gives them their independent duties but also gives the electors their rights to vote at the election for centralization and to petition for the transfer of territory.

We therefore believe, in the absence of a statute regulating the question, the authority to call an election on the question of centralization and the authority to make a transfer of territory being vested in two entirely separate and independent bodies, that the action of the rural school board in calling an election on the question of centralization does not abridge the rights of electors of certain territory within such district to petition the county board of education for the transfer thereof before the election takes place resulting in favor of centralization.

There is no claim that territory can be transferred, under Section 4696, from a centralized school district, and under the holding in 104 Ohio State, supra, the district is centralized within the

contemplation of the statute only from the time of the election resulting in favor of it.

It is thus clear that the district was not centralized at the time of filing the petition of 75 per cent. of the electors, and if the transfer takes place within the contemplation of the statute at the time of the filing of such petition with the county board of education, then the transfer was made before the district was centralized and the writ should be allowed as to the petition for transfer filed before that time.

We are therefore unanimously of the opinion that when the petition for transfer was filed with the Summit county board of education, containing 75 per cent. of the qualified electors of the territory proposed to be transferred, as described in the petition, it thereupon became the mandatory duty of said county board of education to investigate and check up the signatures thereon and determine whether or not the petition contained the genuine signatures of 75 per cent. or more of the electors within such territory, and whenever they determined that said petition did contain the requisite number of signatures it became their mandatory duty to transfer such territory to the Stark county school district, and that by operation of law, by virtue of the mandatory provisions of Section 4696, the transfer of said territory then related back to the situation on the day the petition was filed, April 15, 1926, and became effective within the contemplation of the statute from that time, and such time being prior to the time of the election resulting in favor of centralization the transfer thereupon became effective before the time of the centralization of the district, and we are of the

opinion that this is true even though the rural board of education had, prior to the time of filing the petition, passed the necessary resolution to submit the question of centralization to the electors of the township rural school district, the vote resulting in favor of centralization having not yet been taken.

Finding as we do, and for the reasons given, under the agreed statement of facts the writ of mandamus is allowed as to the petition for the transfer of territory filed April 15, 1926, and denied as to the other two petitions filed subsequent to the election resulting in favor of the centralization. A decree may be drawn accordingly.

*Decree accordingly.*

PARDEE, P. J., and WASHBURN, J., concur.